**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.S.-1, K.S., and M.S.**

**No. 20-0832** (Taylor County 18-JA-54, 18-JA-57, and 18-JA-58)

## MEMORANDUM DECISION

Petitioner Father J.S.-2, by counsel Ira Richardson, appeals the Circuit Court of Taylor County's September 18, 2020, order terminating his parental rights to J.S.-1, K.S., and M.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Mary S. Nelson, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without allowing him a meaningful opportunity to complete his improvement period and in denying his request for post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner and the mother of J.S. engaged in domestic violence. The DHHR alleged that during one incident in March of 2018, one of the children intervened in a domestic violence incident while another called for law enforcement.[2] While petitioner and the mother downplayed the nature of the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Moreover, because the youngest child and petitioner share the same initials, we refer to them as J.S.-1 and J.S.-2, respectively, throughout this memorandum decision.

[2]The children that were involved in this incident are the biological children of J.S.-1's mother, but not petitioner. These children are not at issue in this appeal.

incident, the children disclosed that petitioner was threatening the mother, had thrown an object that nearly hit J.S.-1 (who was not yet one year old), and had struck the mother in the past. The DHHR also alleged that petitioner had a history of Child Protective Services ("CPS") involvement related to substance abuse and domestic violence.

The circuit court convened for a preliminary hearing in April of 2018, and petitioner waived his right to hear evidence related to the children's removal. Petitioner was afforded supervised visitations with the children and was ordered to submit to random drug screening. At the preliminary hearing, petitioner testified that he was taking Suboxone and no illicit substances, however, he submitted a drug screen that day which was positive for buprenorphine (indicating Suboxone use) as well as amphetamine and methamphetamine.

In September of 2018, the circuit court granted petitioner a three-month post-adjudicatory improvement period, noting concerns with petitioner's truthfulness regarding his drug use. Although petitioner initially claimed his earlier drug screen returned a positive result due to "osmosis" while he was in the vicinity of methamphetamine use, he later admitted to using methamphetamine. The circuit court found that petitioner was testing negative for illicit substances at the time of the hearing. Over the following months, the circuit court extended petitioner's post-adjudicatory improvement period and, later, granted him a six-month post-dispositional improvement period in June of 2019. Petitioner completed his adult life skills and parenting classes, a psychological evaluation, and a detoxification program. Petitioner also remained free from controlled substance use throughout his improvement periods.

The circuit court held a dispositional hearing in February of 2020. Per the reports of the parties, the circuit court found that petitioner had successfully completed his improvement period. However, neither petitioner nor the mother of K.S. and M.S. appeared in person. The circuit court found it necessary to continue the final dispositional hearing in order to establish a parenting plan and to hear from the mother of K.S. and M.S. regarding the children's wishes for contact with petitioner. J.S.-1's mother stated that petitioner had been given the option to visit with J.S.-1 but had been inconsistent with visitation. The circuit court ordered petitioner to continue drug screening pending the final hearing.

In July of 2020, the circuit court held the final dispositional hearing. The circuit court heard evidence that, after a brief interruption of drug screening due to the COVID-19 pandemic, petitioner missed four screens in May of 2020 and two tests in June of 2020. Later in June, petitioner tested positive for methamphetamine and amphetamine. Thereafter, petitioner missed a test on July 1, 2020, and subsequently tested positive for methamphetamine and amphetamine on July 7, 2020. Finally, petitioner missed a screening on July 13, 2020, just two days prior to the final hearing. The circuit court found that the screens that petitioner missed would have yielded positive results and were missed to avoid detection of drug use. The mother of K.S. and M.S. testified that petitioner had not visited the children since November of 2018. M.S.'s mother testified that the child had only received three text messages from petitioner since December of 2019. The mother of K.S. and M.S. further testified that she desired her husband to adopt M.S. and K.S. and that the children were "all for it." Petitioner testified and admitted that he had "let down" J.S.-1 but asserted that he "would do what he needed to do" in order to retain his parental rights.

Petitioner also asserted that he had contact with M.S. "a few times a week," in contradiction to that child's mother's testimony.

Ultimately, the circuit court found that petitioner had not completed his improvement period because he continued to abuse controlled substances, which had adversely impacted his ability to parent the children. The circuit court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect and abuse as he had demonstrated an inadequate capacity to remedy the conditions on his own or with help. Accordingly, the circuit court found that it was necessary for the children's welfare to terminate petitioner's parental rights to all children. Finally, the circuit court permitted petitioner post-termination visitation with the children at the discretion of their respective mothers, with whom the children were placed. The circuit court's September 18, 2020, order memorialized its decision.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first affording him a meaningful opportunity to complete his improvement period. Petitioner asserts that the COVID-19 pandemic and quarantine protocols limited his access to the necessary services to complete the improvement period. However, petitioner fails to identify any services that he was denied. Petitioner only addresses random drug screening, which was unavailable from March to June of 2020. In fact, according to the record, petitioner had completed all other services prior to the February of 2020 hearing. Therefore, we find petitioner's argument unavailing on appeal.

The circuit court correctly terminated petitioner's parental rights upon a finding that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect

---

[3]The children's respective mothers have retained their parental rights, and they have achieved permanency in their mothers' care.

or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(1), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the abusing parent

> ha[s] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

In this case, despite extensive progress from petitioner, he ultimately relapsed into substance abuse. After two years of proceedings and services, petitioner could not manage to maintain his sobriety. Furthermore, the circuit court heard testimony that petitioner had either missed visitations, as was the case with two-year-old J.S.-1, or failed to visit his children at all, as was the case with K.S. and M.S. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Based on petitioner's relapse after the provision of extensive services and his failure to maintain consistent visitation with the children, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future. Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court found that there was no reasonable likelihood that the conditions could be corrected, it was within its discretion to terminate petitioner's parental rights, and we find no error in that decision on appeal.

Finally, petitioner argues that the circuit court erred in denying him post-termination visitation with the children. However, petitioner was granted this relief below. In the circuit court's final order, it granted permanent care, custody, and control of the children to their respective mothers and, for all three children, ordered that their respective mothers "determine, if it is in the best interests of [the child] to have contact, or visitation, with [petitioner], and under what conditions, the visitation/ contact occurs, if any visitation/ contact occurs." Clearly, the circuit court did not preclude future contact between petitioner and the children. We find no error in the circuit court's ruling with respect to post-termination visitation.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 18, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton